### J. J. SANDERS v. E. H. MAYO.

(Filed 26 September, 1923.)

1. **Seller and Purchaser—Vendor—Fraud—Deceit—Pleadings—Motions— Nonsuit—Questions for Jury—Trials.**

In an action to recover upon a note given for shares of stock, the defendant admitted the execution of the note and alleged and offered evidence tending to show that the plaintiff, while an officer of the corporation and having peculiar and superior knowledge of its financial affairs, had induced him to purchase, knowingly representing that the corporate indebtedness was much less than it actually was, and that otherwise he would not have made the transaction: *Held,* upon plaintiff's motion as of nonsuit, the issue of fraud and deceit was for the jury.

2. **Same.**

*Held,* upon the evidence in this action upon a note given for the purchase of shares of stock in a corporation, it was for the jury to determine whether the misrepresentations were of such character and were made under such circumstances as were calculated to impose upon or deceive the defendant, as a person of ordinary prudence, and whether he, as such, should have relied upon them.

**3. Evidence—Corporations—Books—Secondary Evidence.**

Upon an issue of plaintiff's fraud and deceit in this action in inducing the defendant to purchase stock on the former's misrepresentation of the indebtedness of a corporation: *Held,* parol testimony was unobjectionable as secondary evidence, when it was made to appear that the corporation's books did not disclose the amount of its indebtedness.

CIVIL ACTION, tried before *Kerr, J.,* and a jury, at April Term, 1923, of NASH.

On 24 May, 1919, the defendant executed and delivered to the plaintiff four promissory notes, under seal, in the aggregate sum of $5,782.50, with interest from the respective dates of maturity. The defendant admitted the execution of the notes, but denied liability on the ground that they had been procured by fraud. The verdict was as follows:

"1. Did the defendant execute the notes sued upon? Answer: 'Yes.'

"2. What amount is due thereon? Answer: '$5,782.50 and interest, as appears on face of the four notes.'

"3. Were the said notes obtained from the defendant by fraud, as alleged in the answer? Answer: 'Yes.'"

Judgment for the defendant, and appeal by the plaintiff.

*I. T. Valentine, Albert L. Cox, and Carroll W. Weathers for plaintiff. Finch & Vaughan and Manning & Manning for defendant.*

ADAMS, J. The defendant alleged that the consideration of the notes sued on was fifty-five shares of stock held by the plaintiff in the Farmville Lumber Company, a corporation; that prior to the execution of the notes the plaintiff had managed and controlled the business of the company and knew how much it owed; that the defendant, at the time he purchased the stock, made specific inquiry as to the indebtedness, and was told by the plaintiff that the debts outstanding were only $6,500; that he relied upon this statement, and afterwards found it to be false and fraudulent, the indebtedness being in fact about $18,000; and that he was thereby deceived and induced to purchase the plaintiff's stock and to execute the notes.

In his answer the defendant admitted that at the time he purchased the plaintiff's shares he owned stock in the corporation of the par value of $600, but alleged he knew nothing of the indebtedness. All the allegations of fraud were denied by the plaintiff, who contended that he took no part in the management of the business after 1 January, 1918, and that he never made any statement to the defendant concerning the financial condition of the company.

At the close of the defendant's evidence the plaintiff moved for judgment, on the ground that the defendant had admitted the execution of

SANDERS *v.* MAYO.

the notes, and that there was not sufficient evidence of fraud, and excepted to the court's denial of his motion. The agreement of the appellant rests chiefly on the contention that the defendant had a better opportunity than the plaintiff to know the financial condition of the concern, and bought the stock upon his own judgment in order to control the business.

In these circumstances the controversy was resolved into a question of fact for determination by the jury. In view of the allegations in the answer, supported as they were by evidence on behalf of the defendant, the plaintiff was not entitled to judgment on the pleadings under the decision in *Cash Register Company v. Townsend,* 137 N. C., 652, and in similar cases. The plaintiff's alleged statement was not a mere matter of opinion.

It is not necessary to discuss the exception at length, for the reason that the principles which are applicable to this evidence have been declared and maintained in a number of our decisions. *Walsh v. Hall,* 66 N. C., 233; *Machine Co. v. Feezer,* 152 N. C., 516; *Leonard v. Power Co.,* 155 N. C., 10; *Pate v. Blades,* 163 N. C., 267; *Bell v. Harrison,* 179 N. C., 190; *Williams v. Hedgepeth,* 184 N. C., 114; *Currie v. Malloy,* 185 N. C., 213.

We do not understand the appellant to contend in his argument here that the defendant was necessarily charged with the legal duty to verify the plaintiff's representations, for upon the evidence introduced it was the province of the jury to say whether the representations were of such a character and were made under such circumstances as were calculated to impose upon or deceive a person of ordinary prudence, and whether the defendant, as a reasonably prudent person, should have relied on them. *Blacknall v. Rowland,* 108 N. C., 555; *S. c.,* 116 N. C., 389; *May v. Loomis,* 140 N. C., 350; *Sewing Machine Co. v. Bullock,* 161 N. C., 1; *Miller v. Mateer,* 172 N. C., 401.

The defendant was permitted to testify that after he assumed the management of the business, which was about two weeks after he purchased the stock, he learned that the total indebtedness of the company was about $33,000, and to this evidence the plaintiff excepted, on the ground that the books were the best evidence. But it does not appear that the various items of the indebtedness were entered on the books; on the contrary, this witness said that the "books did not show anything," and another testified that there was nothing in the books "to disclose the bank indebtedness."

The remaining exceptions are obviously untenable and require no discussion. We find no reversible error.

No error.